IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAKA MUHAMMAD,

    Plaintiff,     No. CIV S-07-0375 GEB GGH P

    vs.

DIRECTOR OF CORRECTIONS, et al.,     FINDINGS AND RECOMMENDATIONS

    Defendants.

_____/

I.    Introduction

       Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the second amended complaint (Doc. 12) filed September 7, 2007. Plaintiff alleges that defendants violated his Eighth Amendment protection against cruel and unusual punishment by forcing him to sleep on a mattress contaminated with bodily fluids. Pending before the court is defendants' motion for summary judgment (Doc. 89) filed October 2, 2009. Plaintiff filed an opposition (Doc. 92) on January 19, 2010.

II.    Plaintiff's Allegations

       The second amended complaint alleges that plaintiff was compelled, in 2006, to sleep on a mattress contaminated with blood and urine stains at California State Prison-Solano (CSP-Solano). It was served on defendants Sisto, Hines, and Noble. (Doc. 13.) On August 22,

2008, the second amended complaint was dismissed as to defendant Sisto. (Doc. 67.)

In his opposition to summary judgment, plaintiff alleges that defendants failed to comply with prison guidelines for replacing "contaminated mattresses." (Doc. 92 at 1, 3-4.) For example, they did not "place contaminated mattress in a clear mattress bag and clearly mark with the date and condition of mattress[;] place the contaminated mattress next to the infectious waste locker . . . [;] . . . contact the supervising registered nurse . . . [;] [nor had] contaminated mattress placed in appropriate red biohazard waste bag." (Id. at 3, 4.) Instead, plaintiff alleges, defendants offered him a replacement mattress that was "in worst [sic] or the same condition." (Id. at 6.) He claims that defendants' response to his "contaminated mattress" violates his Eighth Amendment right to be free of cruel and unusual punishment.

III.     Evidentiary Findings

In January 2008, plaintiff filed a motion for preliminary injunction (Doc. 27), claiming that he was still being forced to sleep on a contaminated mattress. On June 11, 2008, plaintiff filed a declaration (Doc. 48) stating that the mattress he currently slept on contained bodily fluids or bodily fluid stains. He also stated that the replacement mattress offered to him was in the same condition or worse than the mattress he had. (Id.)

On July 30, 2008, the court held an evidentiary hearing on plaintiff's motion for preliminary injunction. At the hearing, defendants offered as exhibits photographs of the mattress plaintiff currently used. The court found the mattress to be in "relatively good condition" with only a few small stains. (Doc. 60 at 3.) No evidence was offered as to what caused the stains, but the court observed that they did not appear to be bodily fluid stains and could have been caused by, for example, spilled coffee. (Id.) Plaintiff testified – in seeming contradiction to his allegation that the mattress was contaminated with bodily fluids – that he had brought this mattress with him when he transferred cells because it was in fairly good condition. (Id.)

\\\\\

The court concluded that plaintiff's mattress was in "adequate" condition.  (Id.) As plaintiff failed to show a threat of irreparable injury based on the current state of his mattress, the court denied his motion for preliminary injunction on that basis and did not reach the question of whether plaintiff's previous mattresses were contaminated.  (Id.; see also Doc. 67.)

The court hereby takes judicial notice of its findings at the evidentiary hearing. See Fed. R. Evid. 201; Grason Elec. Co. v. Sacramento Municipal Utility Dist., 571 F.Supp. 1504, 1521 (E.D. Cal. 1983) (court may take judicial notice of adjudicative facts at the summary judgment stage).

IV.     Motion for Summary Judgment

Defendants contend there are no issues of material fact as plaintiff's claims of a stained mattress do not create a condition amounting to "cruel and unusual punishment" and defendants Hines and Noble did not show deliberate indifference to plaintiff's needs.

   A.     Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

1  and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.
2  "[A] complete failure of proof concerning an essential element of the nonmoving party's case
3  necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment
4  should be granted, "so long as whatever is before the district court demonstrates that the standard
5  for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at
6  2553.

7  If the moving party meets its initial responsibility, the burden then shifts to the
8  opposing party to establish that a genuine issue as to any material fact actually does exist.  See
9  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356
10 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may
11 not rely upon the allegations or denials of its pleadings but is required to tender evidence of
12 specific facts in the form of affidavits, and/or admissible discovery material, in support of its
13 contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,
14 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is
15 material, i.e., a fact that might affect the outcome of the suit under the governing law, see
16 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.
17 Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
18 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
19 nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

20 In the endeavor to establish the existence of a factual dispute, the opposing party
21 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
22 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
23 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
24 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
25 genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
26 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On December 14, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure (Doc. 16). See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988). The above advice would, however, seem to be unnecessary as the Ninth Circuit has held that procedural requirements applied to ordinary litigants at summary judgment do not apply to prisoner pro se litigants. In Thomas v. Ponder, __F.3d__, No. 09-15522, 2010 WL 2794394 (9th Cir. July 16, 2010), the district courts were cautioned to "construe liberally motion papers and pleadings filed by pro se inmates and ... avoid applying summary judgment rules strictly." Id. at 10297, *5. No example or further definition of "liberal" construction or "too strict" application of rules was given in Ponder, suggesting that any jurist would know inherently when to dispense with the wording of rules. Since the application of any rule which results in adverse consequences to the pro se inmate could always be construed in hindsight as not liberal enough a construction, or too strict an application, it appears that only the essentials of summary judgment, i.e., declarations or testimony under oath, and presentation of

5

evidence not grossly at odds with rules of evidence, apply in this dichotomous litigation system where one side must obey the written rules and the other side substantially absolved from doing so.

B. <u>Evidentiary Objections</u>

Defendants object to plaintiff's exhibits A-E and G-J attached to his opposition, arguing that such documents have not been properly authenticated, lack foundation, contain improper opinion testimony and/or hearsay, are irrelevant, and are otherwise conclusory and speculative, citing Fed. R. Evid. 402, 602, 701, 802 and 901. (Doc. 93-1.) Defendants properly note that "documentary evidence must be properly authenticated." <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990) (document may be authenticated by declaration of individual having personal knowledge of matters set forth in document and creation of document); see also Beyene v. Coleman Sec. Serv., Inc., 854 F.2d 1179, 1182 (9th Cir.1988) (quoting U.S. v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970) ("A writing is not authenticated simply by attaching it to an affidavit .... The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery.").

However, documents not authenticated at the summary judgment stage may be made admissible at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept.of Public Safety, 220 Fed. Appx. 670 (9th Cir. 2007).

With the above rules and standards in mind, the court hereby rules as follows regarding defendants' evidentiary objections.

1. Exhibit A, Administrative appeal documents dating from 2006 and 2007 - Objection overruled;

2. Exhibit B, CSP-Solano Inmate Clothing Laundry/Exchange Service excerpt from Operations Manual, revised May 2008 - Objection sustained;

3. Exhibit C, Memorandum regarding contaminated mattress replacement guidelines dated August 29, 2002 - Objection overruled;

4. Exhibit D, copy of 18 U.S.C. § 2340, Definitions - Objection sustained;

5. Exhibit E, CDCR population report for December 28, 2009 - Objection sustained;

6. Exhibit G, plaintiff's Inmate Request for Interview dated July 15, 2007; letter to plaintiff from California Department of Public Health dated August 17, 2007; miscellaneous documents from the Center for Disease Control and Prevention - Objection sustained;

7. Exhibit H, Memoranda to inmates dated July 27, 2007 and October 6, 2008, respectively - Objection sustained;

8. Exhibit I, plaintiff's declaration and request for judicial notice dated June 5, 2008; informative chrono dated April 2007; Cell/Bed Area Search receipt; and incomplete proof of service - Objection sustained;

9. Exhibit J, Plaintiff's inmate appeal dated August 2008 and various other 2008 documents - Objection sustained.

The court informs all parties that it will not consider inadmissible evidence in ruling on the instant motion.

C.  Undisputed Facts

The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted have been deemed undisputed.

Plaintiff does not allege that he suffered any physical harm from being forced to sleep on a contaminated mattress. DUF #1.

On June 25, 2006, plaintiff submitted an appeal complaining that his mattress appeared to be contaminated by bodily fluids and demanding a new mattress. DUF #2. In 2006 and 2007, defendants Hines and Nobles routinely (approximately once a month) inspected

1  inmates' mattresses to check for contraband, and also to check the mattresses' condition.  DUF
2  ## 3, 4.  Neither defendant wanted to be in close contact with mattresses stained with bodily
3  fluids during their routine inspections of inmates' mattresses.  DUF ## 7, 8, 9.

4  Both defendants understood that prison regulations provided that damaged or
5  worn out mattresses could be taken to designated locations during established hours of exchange.
6  DUF ## 11, 12.  Both defendants also understood that prison regulations required that inmate
7  mattresses found contaminated were to be placed in containers marked "contaminated" and taken
8  to a designated location for proper decontamination or disposal.  DUF ## 13, 14.

9  On June 25, 2006, defendant Hines interviewed plaintiff regarding plaintiff's
10  claim that his mattress appeared to be contaminated by bodily fluids and his demand for a new
11  mattress.  DUF # 17.  Defendant Hines offered plaintiff his choice of replacement mattress based
12  on available stock at that time, but plaintiff claimed that the offered mattresses were unsuitable
13  and refused to exchange his mattress.  DUF # 18.

14  On August 22, 2006, defendant Noble interviewed plaintiff regarding his
15  complaint about the mattress.  DUF #22.  Defendant Noble advised plaintiff that there were no
16  new mattresses available at that time, but that plaintiff could exchange his mattress for another
17  used mattress.  DUF # 23.  Defendant Noble told plaintiff that he could also look at available
18  mattresses in other buildings on the yard, but plaintiff refused to look at them and kept
19  demanding a new mattress.  DUF # 24.  See also Evidentiary Findings, supra (plaintiff kept his
20  allegedly contaminated mattress in move to new cell; as of July 2008, mattress was in acceptable
21  condition and did not appear to be stained with bodily fluids).

22  D. Disputed Facts

23  Plaintiff claims that his mattress in 2006 was "contaminated" and should have
24  been disposed of as hazardous waste pursuant to prison regulations concerning contaminated
25  bedding. (Doc. 92.)  However, based on both the mattress's condition at the July 2008
26  evidentiary hearing and the fact that plaintiff opted to keep the mattress rather than replace it with

his choice of available used mattresses, and even kept it with him when he transferred to a new cell, the court found plaintiff's allegation that the mattress was currently contaminated not credible. (Doc. 67.) Because the court did not reach whether plaintiff's mattress had been contaminated in the past, the question of whether it was contaminated in 2006 is a disputed fact for purposes of summary judgment.

      E.      Eighth Amendment

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, Farmer v. Brennan, 511 U.S. at 832; see also, Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) ("an institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety" [internal quotations omitted] ). When an inmate has been deprived of necessities, "the circumstances, nature and duration of a deprivation ... must be considered in determining whether a constitutional violation has occurred." Johnson, supra, at 731.

Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986). The Constitution does not mandate comfortable prisons, and prison conditions may be restrictive and even harsh. Rhodes v. Chapman, 452 U.S. 337, 347, 349, 101 S.Ct. 2392 (1981). Only unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Whitley, 475 U.S. at 319.

\\\\\

The Ninth Circuit has held that "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1315-1315 (9th Circ. 1995), citing Gee v. Estes, 829 F.2d 1005, 1006 (10th Cir. 1987) (Eighth Amendment claim established by allegations that prisoner was placed naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure); McCray v. Burrell, 516 F.2d 357, 366-69 (4th Cir. 1974) (prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released), cert. denied, 426 U.S. 471, 96 S.Ct. 2640 (1976); Gates v. Collier, 501 F.2d 1291, 1302 (5th Cir. 1974) (punishment of prisoner by confinement in small, dirty cell without light, hygienic materials, adequate food, heat; prisoner also was punished through administration of milk of magnesia); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), cert. denied, 414 U.S. 878, 94 S.Ct. 49 (1973). As the above cases suggest, constitutionally "severe" sanitation problems are often the cumulative effect of multiple, individually egregious conditions.

"[T]here are two parts to the test of whether an alleged deprivation is cruel and unusual punishment. The first part of the test is objective: Was the deprivation sufficiently serious? The second part is subjective: Did the officials act with a sufficiently culpable state of mind?" LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993), citing Wilson v. Seiter, 501 U.S. 294, 299-300, 111 S.Ct. 2321 (1991). "As such, to be actionable under the Eighth Amendment, these deprivations must satisfy not only the objective component of the relevant test, i.e., was the deprivation sufficiently serious, but also the subjective component, i.e., was the offending conduct wanton." Id. "The second part of the test, as we have indicated, mandates an examination of the state of mind of the person imposing the deprivation, and that part of the test

is not satisfied unless the pain which has been inflicted is both 'unnecessary and wanton.' " Id., quoting Jordan v. Gardner, 986 F.2d 1521, 1525 (9th Cir. 1993) (en banc).

The instant allegations resoundingly fail both parts of the test. Plaintiff's allegations that his mattress in 2006 was contaminated with blood and urine, viewed in the light most favorable to him, do not rise anywhere near the level of an Eighth Amendment violation. Defendants correctly observe that the Ninth Circuit has never published an opinion holding that a dirty or stained mattress constitutes "cruel and unusual punishment." (Doc. 89 at 8.) Moreover, courts in other circuits have held that far worse allegations of unsanitary bedding and/or living conditions did not make out an Eighth Amendment claim. See Gedder v. Godinez, 857 F. Supp. 1334, 1341 (N.D. Ill. 1995) (allegations of defective pipes, sinks and toilets, improperly cleaned showers, broken intercom system, stained mattresses, accumulated dust and dirt, and infestation by roaches and rats, viewed separately or cumulatively, were insufficient to establish deprivation of human need sufficient to constitute violation of the Eighth Amendment); Wilson v. Schomig, 863 F. Supp. 789, 794-795 (N.D. Ill. 1994) (absent showing of physical harm, claim that inmate was forced to sleep on urine- and feces-stained mattress in dirty, roach-infested cell did not rise to level of Eighth Amendment violation). Thus, plaintiff's allegations of a contaminated mattress fail to demonstrate a "sufficiently serious deprivation" to invoke constitutional protection. See Farmer v. Brennan, supra, 511 U.S. at 834. This is particularly true in light of plaintiff's refusal to trade in his complained-of mattress for any other available mattress and his decision to take the mattress with him to a new cell. For someone who claims that his mattress constitutes a "cruel and unusual" condition, plaintiff appears remarkably attached to it.

Moreover, although it may be a disputed fact that plaintiff's mattress was contaminated in 2006, the key issue is – contaminated by what. Plaintiff offers no evidence, other than his total speculation, that the mattress was contaminated by urine or other bodily fluids as opposed to more mundane stains such as coffee, tea or even water. Surely, the requirements of the Eighth Amendment include the nature of the stains by which the mattress was contaminated.

The second prong is equally problematic. "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" Farmer v. Brennan, supra, 511 U.S. at 834, quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted). Here, petitioner has made no showing that defendants Hines and Noble had a culpable state of mind, his speculation on this issue notwithstanding. See Clouthier v. County of Contra Costa, 591 F.3d 1232, 1252 (9th Cir. 2010) (speculative testimony will not defeat summary judgment), citing Soremeken v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Rather, defendants acted reasonably in following up on plaintiff's concerns about his mattress and offering him a choice of mattresses among those currently available. The fact that they did not treat plaintiff's mattress as "contaminated" in 2006 and dispose of it as a biohazard suggests that, as the court observed at the 2008 evidentiary hearing, the mattress did not appear to be stained with blood, urine or any other bodily fluid. In any event, nothing in the undisputed facts or plaintiff's allegations demonstrate the requisite culpable state of mind for Eighth Amendment liability.

Because plaintiff has not raised a material fact issue sufficient to sustain his claims on summary judgment, the undersigned need not reach defendants' other arguments.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (docket #89) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

\\\\\

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED:   08/06/2010

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
muha0375.sj